AO 91 (Rev. 11/11) Criminal Complaint (Rev. by USAO on 3/12/20)  ☐ Original  ☐ Duplicate Original

# UNITED STATES DISTRICT COURT

for the

Central District of California

LODGED
CLERK, U.S. DISTRICT COURT
7/1/25
CENTRAL DISTRICT OF CALIFORNIA
BY: MRV DEPUTY

FILED
CLERK, U.S. DISTRICT COURT
7/2/2025
CENTRAL DISTRICT OF CALIFORNIA
BY: bm DEPUTY

United States of America

v.

Laura Sandez,

Defendant

Case No. 2:25-mj-04075-DUTY

## CRIMINAL COMPLAINT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, Jose Cervantes-Zamora, the complainant in this case, state that the following is true to the best of my knowledge and belief. On or about the date of December 1, 2022, in the county of Los Angeles in the Central District of California, the defendant violated:

| Code Section | Offense Description |
|---|---|
| 8 U.S.C. § 1326(a) | Illegal Alien Found in the United States Following Removal |

This criminal complaint is based on these facts:

*Please see attached affidavit.*

☒ Continued on the attached sheet.

/s/
Complainant's signature

Jose Cervantes-Zamora, Deportation Officer
Printed name and title

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone.

Date: 7/2/2025

Judge's signature

City and state: Los Angeles, California

Hon. Jean P. Rosenbluth, U.S. Magistrate Judge
Printed name and title

AUSA: (x4061)

**AFFIDAVIT**

I, Jose Cervantes-Zamora, being duly sworn, declare and state as follows:

### I. PURPOSE OF AFFIDAVIT

1.  This affidavit is made in support of a criminal complaint against and arrest warrant for LAURA SANDEZ, ("defendant"), charging her with violating Title 8, United States Code, Section 1326(a), Illegal Alien Found in the United States Following Deportation.

2.  The facts set forth in this affidavit are based upon my personal observations, my training and experience, and information obtained from various law enforcement personnel and witnesses.  This affidavit is intended to show that there is sufficient probable cause for the requested complaint and warrant and does not purport to set forth all my knowledge of or investigation into this matter.  Unless specifically indicated otherwise, all conversations and statements described in this affidavit are related in substance and in part only.

### II. BACKGROUND OF DEPORTATION OFFICER JOSE CERVANTES-ZAMORA

3.  I am a Deportation Officer ("DO") with the United States Department of Homeland Security ("DHS"), Immigration and Customs Enforcement ("ICE").  I have been a DO with ICE, formerly known as the Immigration and Naturalization Service ("INS"), since July 2021.  I am currently assigned to the Los Angeles Enforcement and Removal Operations ("ERO") field office.

### III. TRAINING AND EXPERIENCE REGARDING FINGERPRINTS AND DHS DATABASES

4. Based on my training and experience, I know the following:

    a. Every person has a unique set of fingerprints. I also know that unique identification numbers – including, but not limited to, Fingerprint Identification Number System ("FINS") numbers and Federal Bureau of Investigations ("FBI") numbers – can be assigned to a person's fingerprints, thereby distinguishing that person's fingerprints in law enforcement databases from another person's fingerprints. In many cases, DHS and other government agencies utilize FINS and FBI numbers to associate unique fingerprint records and information to a specific individual.

    b. Moreover, when a person is fingerprinted by DHS agencies, such as ICE (formerly INS), those unique fingerprint identifiers are associated with an individual's unique alien number ("A-number") and alien file ("A-file"). An A-file typically contains official documentation regarding a person's deportation or removal history as well as alienage. That A-file is maintained in DHS custody, and documents and information from that A-file are uploaded to official DHS databases that can be accessed to determine, among other things, whether a person has been removed or deported from the United States, whether that person is a foreign national, and whether that person has been lawfully admitted into the United States, pursuant to, for example, a non-immigrant visa.

5.  Generally, after an arrest for a criminal offense, a person's biometric fingerprint information is obtained and enrolled into a nationwide repository for criminal history records as part of a normal booking process. That information is then associated with a unique identification number for the person's fingerprints, typically the FBI number, which is searchable within various law enforcement indices and comparable with other government records, including those belonging to DHS and those associated with an A-file and A-number. A match between fingerprint identifiers can therefore be used to confirm the identity of a person associated with specific records, including immigration records indicating whether that person is amenable to immigration enforcement action.

## IV. STATEMENT OF PROBABLE CAUSE

6.  On or about December 1, 2022, the ICE Pacific Enforcement Response Center ("PERC")– an ICE center responsible for vetting and researching the arrests of suspected foreign nationals – received an electronic notification based on defendant's biometric fingerprint information that defendant was in the custody of the Azusa Police Department ("APD"), within the Central District of California  On or about that day, PERC lodged a DHS Immigration Detainer with APD. Defendant is not currently in custody with APD.

7.  I compared the biometric fingerprint information from the PERC electronic notification generated from the arrest referenced above, against that found in the DHS databases,

thereby confirming that they reference the same person, defendant, a previously deported alien.

8.   I compared photographs in the DHS databases to photographs taken at the time of defendant's booking into local law enforcement custody.  I thus determined that this DHS application and its contents corresponded to this defendant.

9.   On or about June 27, 2025, I reviewed the printouts of DHS computer indices on records associated to defendant's unique fingerprint identifier that are contained in DHS indices.  I learned the following about defendant's immigration history:

   a.   Defendant is a citizen of Mexico.

   b.   The ICE computer indices confirmed that defendant had been removed, deported, and/or excluded on July 6, 2016, and November 5, 2009, to Mexico.

10.   Based on my training and experience, I know that the ICE computer indices track and document each time an alien is deported or excluded from the United States by ICE, was deported or excluded by the former INS, or is granted permission to enter or re-enter the United States.  The ICE computer indices did not show any record of defendant ever applying for, or receiving from the Attorney General or the Secretary of Homeland Security, permission to re-enter the United States.  Based on my training and experience, I know that such documentation is required to re-enter the United States legally after deportation, and that if such documentation existed, it would ordinarily be found in defendant's DHS A-file and reflected in the ICE computer indices.

## V. **CONCLUSION**

11. For all the reasons described above, there is probable cause to believe that defendant has committed a violation of Title 8, United States Code, Section 1326(a), Illegal Alien Found in the United States Following Deportation.

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone on this  2nd  day of July 2025.

_____
HONORABLE JEAN ROSENBLUTH
UNITED STATES MAGISTRATE JUDGE